## JACOBS et v
## GEM CITY BUILDING & LOAN ASSN

Ohio Appeals, 2nd Dist, Montgomery Co

No 1332. Decided Feb 13, 1936

A. H. Meck, Dayton, for plaintiff in error. McMahon, Corwin, Landis & Markham, Dayton, for defendant, The Gem City Bldg. & Loan Association.

## OPINION

By HORNBECK, J.

Defendant in error was the plaintiff below and plaintiffs in error together with one Christian Wilmking were defendants in error. We refer to the defendant in error as the Loan Association and to the Jacobs by name or as they appeared in the trial court, namely, defendants. The petition sets forth two causes of action, the first for the recovery of a personal judgment against the defendants on a note dated June 1, 1929 in the sum of $3025.00, which note recited that that sum had been received by the defendants "as a loan on

31 shares of stock of $100 each owned by us in said association, etc." The amount claimed due as of the date of filing the petition was $3051.60 for which judgment with interest was prayed against the defendants. The second cause of action was to foreclose a real estate mortgage upon certain described property. The answer of the defendants was an admission of the execution of the note and mortgage, admission they had made some payments, an averment of lack of knowledge of the correctness of the amount purporting to be due on the note and further allegation:

"That these defendants and plaintiff entered into an agreement to cancel said note and mortgage and these defendants have kept and performed their part of said agreement insofar as the plaintiff would allow them to do so. The plaintiff, however, has failed and refused to keep its part of said agreement. By reason thereof said note and mortgage are not a valid obligation against these defendants or either of them and both the note and mortgage have been superseded by the agreement referred to herein."

The prayer was that the plaintiff's petition be dismissed. For reply to the answer plaintiff says:

"That there were negotiations had between plaintiff and answering defendants as to the cancellation of said note and mortgage upon condition that an application made by said defendants to The Home Owner's Loan Corporation would be approved for a sufficient sum to pay plaintiff's note and mortgage; that upon an appraisal of said real estate, said Home Owner's Loan Corporation would not loan a sufficient sum to pay said note and mortgage, either in bonds or by conversion of the bonds into stock of the Association through an escrow agent and plaintiff rejected said offer and notified defendants of such rejection.

Plaintiff further says that said note and mortgage are valid and subsisting claims against defendants and against the real estate described in the petition and deny that the obligation of the same has been superseded by any agreement entered into with defendants."

Upon the issues thus drawn the cause went to trial to a judge of the Common Pleas Court, a jury having been waived. The judge heard the cause, made separate findings of fact and law, found against the defendants and entered money judgment and decree of foreclosure for the Loan Association as prayed in its petition. Upon the answer of the defendants and the reply of the Loan Association there arise these issues (1) Was the agreement entered into by the parties as averred in the answer? The reply substantially admits that there was an agreement between the parties but that one of its terms, namely, that the loan from the Home Owner's Loan Corporation should be sufficient to pay the plaintiff's note, was not met and therefore the contract failed. This is not a denial of the contract but an averment that the terms thereof had not been met and therefore the contract failed. Upon the presentation of the testimony there arose two other issues (1) Was there a time limit of 60 days within which the contract of cancellation of the note and mortgage between the parties should be accomplished by the granting of the loan from the Home Owner's Loan Corporation and if so was it completed within the time fixed and further (2) Did a certain order known as Rule III issued by Paul A. Warner, Supt. of Building and Loans of the State of Ohio and directed to the plaintiff loan association supersede and render ineffective the agreement between the parties as to the cancellation of the note and surrender of the mortgage.

Rule III issuing of date February 10, 1934 insofar as we find it in the record provided:

"No association will be permitted to use the bonds (H.O.L.C.) or the proceeds thereof to directly or indirectly purchase their own shares of deposit accounts."

Upon the material matters presented in this error proceeding, the trial court found as a matter of fact that on or about January 19, 1934, an agreement partially oral and partially written was entered into by and between the plaintiff in this action and answering defendants, whereby it was agreed that the defendants who were then in default, on the note and mortgage sued upon herein, having applied to The Home Owner's Loan Corporation for a loan of One Thousand Seven Hundred and Seventy-Six Dollars ($1776.00) in the form of bonds of the Home Owner's Loan Corporation and in consideration of the signing by the plaintiff of a formal consent to release its lien of mortgage, herein sued upon, the mortgagor agreed to convert the net amount of the bonds remaining, after providing for

the payment of taxes and expenses into such amounts of cash and accounts of The Gem City Building and Loan Association, as the mortgagor can obtain by purchase in the open market to equal the balance on the mortgage account, and plaintiff agreed to receive same in full satisfaction of its note and mortgage.

The court further finds that in pursuance of this agreement, the plaintiff signed a formal consent to be effective for sixty days from January 19, 1934.

The court further finds that no tender or offer was made to the plaintiff, by the defendants or anyone for them, of either Home Owner's Loan Corporation Bonds or cash and accounts of the plaintiff to equal the balance on the mortgage account due, within the said sixty days from January 19, 1934.

The court further finds that the Home Owner's Loan Corporation allowed the loan, and was ready, able and willing to exchange its bonds in the sum of $1776.00 as a loan on the property, providing the plaintiff would release its mortgage; that the defendants did nothing whatever to prevent the carrying out of this contract; that on March 22, 1934 the plaintiff, through its general manager, declined to carry out the terms of this contract of rescission and annulment. The court further finds that at the time of this notification date, March 22, 1934, more than 60 days had elapsed from the signing of the consent of the plaintiff to accept the benefits of the executory contract.

The court further found that an order known as Rule III had been issued from the Superintendent of Building and Loans of Ohio to the plaintiff loan association providing "No association will be permitted to use the bonds or the proceeds thereof to directly or indirectly purchase their own shares of deposit accounts."

The court in its findings of law made no reference whatever to the averment of the reply to the effect that one of the terms of the contract required that the amount of the loan to be made by the Home Owner's Loan Corporation should equal the amount due on the note of the plaintiff held against the defendants nor was any reference made to the effect of the elapse of more than 60 days between the date of entering into of the original agreement and the notification of the plaintiff by the Home Owner's Loan Corporation of the allowance of the loan to the defendants. March 22, 1934 was sixty-two days

from the signing of defendant's Exhibit 2 but this date is not decisive of the time when the association first refused to go through with its agreement. The Jacobs were willing at all times to perform but were prevented by the interpretation which the association put on Rule III which position was taken soon after the promulgation of the rule.

The court grounded its findings of the law solely upon the effect of the issuance of Rule III by the Superintendent of Building and Loan Associations to the plaintiff loan association.

We are of opinion that upon this record, the controlling issue drawn is as to the effect of the issuance of Rule III. The record clearly discloses that the loan association did make the contract as claimed by the defendants; that the one thing which caused it to refuse to go through with its agreement was the order of the Superintendent in the form of Rule III. This fact is disclosed by the record and epitomized in a question propounded to Fred Stockstill, Secretary of the plaintiff loan association and answer thereto:

"Q. Isn't it a fact that's the sole and only reason you didn't go through with the deal was on account of Rule Three just read to the court?

A. I would judge that to be the case for the simple reason we were lined up to go through with it if we had not been stopped."

Upon the state of the pleading there arises a very serious question whether or not the loan association had the right to the defense of Rule III against the contract to cancel upon the completion of the loan of the Home Owner's Loan Association to the defendants. This position by the loan association was an admission of the contract by an affirmative defense of inability to complete by reason of want of legal authority so to do. However, the evidence was admitted by common consent of the parties and the issue was therefore drawn without exception and we are required, as was the trial court, to pass upon it.

There is some further testimony tending to establish that the company would not agree to accept the proceeds from the loan of the bonds of the Home Owner's Loan Corporation unless they totalled the amount of the mortgage indebtedness, but upon this record this position can not be supported. It is obvious that the agreement was to

the effect that the loan association would take the proceeds of the loan from the H. O.L.C. in the amount of $1776.00 as full payment of the amount due on the note of the defendants to the loan association. It appears that the sole reason for the failure of the loan association to go through with its agreement with the defendants was the receipt of Rule III from the Superintendent. There is thus presented the one question, namely, the legal effect of Rule III.

A full draft of the contract which it is admitted was entered into between the Loan Association and the Jacobs follows:

"January 19, 1934.

WHEREAS The Gem City Building and Loan Association of Dayton, Ohio, is the holder of a mortgage on real estate owned by Cecil Jacobs and Lily Jacobs and described as Lot No. 17 Northwest Park Plat Montgomery County, Ohio, upon which there is a balance due of $3,296.72 with interest from Jan. 1, 1934, and

WHEREAS the said mortgagor has not been able to meet the obligations of his mortgage contract and is in danger of losing the property through foreclosure, and

WHEREAS there is also due and unpaid Taxes to the amount of $157.43, and

WHEREAS The Home Owner's Loan Corporation has been organized by the Federal Government to assist Home Owners in distress and said Corporation is willing to lend to the above mortgagor $1,776.00 in the form of bonds of the Home Owner's Loan Corporation, provided the mortgagor can obtain a release of the existing mortgage, and

WHEREAS the said mortgagor has requested that the said mortgagee sign a consent to release its mortgage and accept in lieu thereof bonds of the Home Owner's Loan Corporation of the par value above stated, and

WHEREAS the mortgagee is desirous of co-operating with the Federal Government in assisting distressed Home Owners, but by accepting bonds of the Home Owner's Loan Corporation in the amount offered, it would suffer a substantial loss, and

WHEREAS it is possible for the mortgagor to convert the bonds offered him by the Home Owner's Loan Corporation into part cash and part accounts in The Gem City Building and Loan Association in a total amount which the mortgagee can afford to accept in satisfaction of its mortgage claim, and
. . . . .

WHEREAS the procedure followed by The Home Owner's Loan Corporation, to simplify its operations, provides for delivery of the bonds from the Washington office direct to the mortgagee.

NOW, THEREFORE, in consideration of the signing by the mortgagee of a formal consent (H.O.L.C. form No. 2) to release its mortgage above described, the mortgagor hereby agrees to convert the net amount of bonds remaining, after providing for the payment of taxes and expense, into such amounts of cash and accounts of The Gem City Building and Loan Association as the mortgagor can obtain by purchase in the open market to equal the balance due on the mortgage account and requests that said bonds together with the order hereto attached, be delivered to the mortgagor's broker for that purpose.

(Signed) Cecil Jacobs

Lily Jacobs

To......................Broker

Kindly sell for my account the attached Home Owner's Loan Corporation Bonds of a par value of $....... With the proceeds kindly buy stock of The Gem City Building and Loan Association of an amount, which, together with the cash remaining, will produce a total of $......

Kindly deliver both cash and stock to The Gem City Building and Loan Association for credit to my loan account.

Witness ..........................

(Signed) Cecil Jacobs

Lily Jacobs."

When the agreement was consummated between the parties purposed to have the proceeds of the H.O.L.C. to take the place of the note and mortgage of defendants to the plaintiff, all parties were competent and qualified to enter into such formal agreement. Before consideration of the question of the power of the Superintendent of Building & Loan Associations of the State of Ohio by the promulgation of the rule to abrogate the contract between the Loan Association and the defendants, we must first determine if the obligation of the loan association on the contract was offensive to the rule. Upon this test we find no duty enjoined upon the Loan Association which would in any wise conflict with Rule III.

The Loan Association under the written contract evidently set the amount of the loan from the H.O.L.C., which in its judgment would enable the Jacobs to secure

enough cash and accounts of the Loan Association to liquidate the obligation of the Jacobs to the Association. The contract specifically states the attitude of the Association respecting the amount which the Jacobs could realize on their H.O.L.C. loan in this language:

"Whereas it is possible for the mortgagor to convert the bonds offered him by the Home Owners' Loan Corporation into part cash and part accounts in the Gem City Building and Loan Association in a total amount which the mortgagee can afford to accept in satisfaction of its mortgage claim."

It will be noted that at no time under the contract did the bonds of the H.O.L.C. pass into the ownership of the Loan Association and though it was a rule of the H.O.L.C. that they be sent to the mortgagee, it was not contemplated that the association would control their disposition. The negotiation and sale of the bonds was to be made by the delegated agent of the Jacobs. The bonds, of course, were issued to the defendants upon their security. The specific delegation to the broker by the Jacobs was to buy stock of the Gem City Building and Loan Association of an amount, which, together with the cash remaining will produce a total of $....... It is significant that the total amount is not filled out and lends credence to the claim of the Jacobs and the gist of the body of the written contract to the effect that the association was to accept the proceeds of the $1776.00 loan from the H.O.L.C. According to the written contract the H.O.L.C. bonds at no time were to come into the possession of the Loan Association as payment of the loan of the Jacobs. The sale of the bonds was to be made by the mortgagor in the open market. The application of the cash and of the accounts, the proceeds of the bonds, was to be made by the broker as the agent of the defendants. The right of the defendants to credit accounts of the Loan Association which they owned and held in their name to their indebtedness to the Association was their right and in no wise involved the use of the bonds or the proceeds thereof by the Loan Association to directly or indirectly purchase their own accounts.

If the defendants, independent of the acquisition of the H.O.L.C. bonds, had gone into the market and purchased accounts of the Association, the face value of which was equivalent to the amount of their note due the Association, would there be any doubt that they could have applied these accounts to the payment of their mortgage? We think not. As we interpret the contract of the parties, this was the intendment. The Jacobs were put into possession by reason of the H.O.L.C. loan to produce cash with which they could buy accounts of the Loan Association in a sum which the Association agreed to accept in full for the claim which they held against the Jacobs.

We have been distressed in interpreting this record. It may be that counsel and the court drew upon their knowledge of procedure in the handling of H.O.L.C. loans, growing out of building and loan transactions. This knowledge may extend over and beyond the record and may in a manner account for our inability to clearly appreciate the import of the transcribed testimony. The trial court made specific finding to the effect that no tender or offer was made to the plaintiff by the defendants or any one for them of their Home Owner's Loan Corporation bonds or cash and accounts of the plaintiff to equal the balance on the mortgage account due, within the said sixty days from January 19, 1934. Mr. Stockstill was interrogated respecting this matter and it appears that somebody for the Association signed what is known as form No. 1, a preliminary consent for the issuance of the bonds and that this was done sometime late in December 1933. He also says that this original consent provided for a sixty day period in which this transaction was to be completed. We have no means of knowing whether or not the Jacobs were parties to this consent which was signed by the Association, or to what extent they would be bound by the sixty day provision to which the testimony relates. It does, however, appear that following the signature of consent No. 1 the parties entered into the stipulation of date January 19, 1934 (Defendants' Ex. 2.) This in our judgment sets forth the understanding between the association and the Jacobs as to the date of its execution though the Association did not sign it. By the terms of this instrument the Association agreed to sign H.O.L.C. form No. 2, which is for-

mal consent to release mortgage. No time is fixed in this instrument within which the loan should be consummated. We can not therefore say upon this ██ record that the Jacobs were bound to do anything more respecting the loan within sixty days after the conversation of December, 1933, than appears in Defendants' Exhibits 1 and 2. In any event the motivating reason as admitted by Mr. Stockstill for the refusal of the Board to go through with its part of the agreement was the receipt of Rule III from the Superintendent of Building and Loans.

It is urged in the brief of Jacobs that the loan applied for was in excess of $1776.00. This may be a fact but it can not be found in the record.

There is some uncertainty if the proof has been made by the Jacobs that the H. O.L.C. loan would have gone through in the sum applied for but for the action of the Association. This conclusion, however, may come from our general concept of what would be required before the bonds would be issued rather than upon the testimony which is before us. Because of this fact we hesitate to say (and hold against the Jacobs because of that) that they failed of proof in the particular just mentioned.

It is our opinion that the loan association was not entitled to a judgment on its note against the defendants ██ nor for foreclosure on the mortgage securing the note, inasmuch as the finding of fact of the trial court supported the conclusion of law that the Jacobs had established the averments of their answer and we find that Rule III did not prevent the Association from complying with its obligations under the contract. Whether or not the Jacobs in equity are entitled, under all the facts which may develop on a new trial, to cancellation and surrender of their note and mortgage, we do not say. Determination of this question will be for the trial court in the light of developments, if the Jacobs make the re-

quisite proof under their answer, but if it appears at that time that the parties can not go through with their agreement because of inability to secure the loan from the H.O.L.C. then the action must proceed as one for damages.

BARNES, PJ, and BODEY, J, concur.

## ON APPLICATION FOR REHEARING

Decided March 9, 1936

By THE COURT

Submitted on application for rehearing.

We are asked to make specific ruling on the claim that the Jacobs did not make a tender of the H.O.L.C. bonds or the proceeds thereof equal to the balance due on the mortgage account within sixty days from January 19, 1934. We specifically discussed this question at pages 4, 10 and 11 of our opinion and held in substance that in probability the stipulation of date January 19, 1934, supplanted any agreement which may have been made later in December, 1933. We also held that, if there was an agreement on the part of the Jacobs to go through with their part of the agreement within sixty days from December, 1933, performance on their part was made impossible by the refusal within sixty days of the Loan Association to do that which was enjoined upon it by the agreement. The Loan Association can not be heard to urge the failure of tender by the Jacobs when its own action precluded the possibility of tender.

We are satisfied that oral argument would be of no benefit to the court upon the state of the record. The application for rehearing will be denied.

BARNES, PJ, HORNBECK and BODEY, JJ, concur.